## WILLIAM HOUSTON *vs.* HENRY DARLING & *al.*

Where a vessel is let to be employed for the season in fishing, to one who is to be master, and is to victual and man her, and is to pay to the owners for her hire a certain proportion of her earnings, and is to take his outfits and supplies of them ; the owners are not liable during the time for any outfits furnished by others at the request of the master.

If a creditor release one of several who are joint promissors to him, all are thereby discharged.

Thus, if supplies are furnished to the owners and sharesmen of a vessel, let on shares, on their joint responsibility, the release of one is a release of all.

ASSUMPSIT for a balance of $60,20, claimed of the defendants as owners of the schooner *Polly*, for a quantity of fish barrels. The charge in the account annexed to the writ was made to "Schooner *Polly* and sharesmen," and amounted, without the credit, to $165,20. It was admitted that the defendants were owners of the schooner. *Alexander C. Todd*, master of the *Polly*, when the barrels were delivered, was called as a witness by the plaintiff, and objected to by the defendants. The plaintiff released him, and he was admitted. From his testimony it appeared, that about *April* 24, 1832, he took the *Polly* of the defendants for the season, to be employed in fishing upon the usual terms ; he to be master, and to victual and man her, and to pay to the defendants a certain portion of her earnings ; and that it was agreed, that he should take all the outfits and supplies for the schooner of the defendants, who were merchants in *Bucksport* ; that the schooner was engaged in the cod fishery until *August*, 1832, when she returned to *Bucksport*, and all the fish were delivered to the defendants to be cured and sold for the benefit of all concerned ; that the parties then agreed to employ the schooner for the remainder of the season in the mackerel fishery upon the same terms; that he applied to the defendants for barrels, but they had not enough, and wished him to ascertain if any could be obtained at *Prospect*, and inform them of the prices and terms; that he applied to the plaintiff who had some barrels on hand, obtained his prices and terms, and informed the defendants thereof by letter, and received from them a written answer, advising him to take them, which he did. He testified, that they were purchased by

him for the benefit and on the credit of the owners and sharesmen of the schooner *Polly*, and that at the time of the delivery of the barrels to him, a bill was made out and delivered to him, charging the barrels to the owners and sharesmen of the schooner; that it was agreed between him and the plaintiff, that they should be paid for at the close of the season; that the mackerel fishing was a losing concern, as he did not receive enough to pay for victualling and manning; that on the return of the schooner, a settlement was had between the parties concerned, in which the barrels " were charged to the great general bill;" that all the outfits and supplies which had not been used, among which were 150 barrels, were then divided between the owners and sharesmen, the owners of the schooner receiving three tenths and the sharesmen seven tenths, which were their respective proportions; that something was then said about the plaintiff's bill, and he told the defendants that it ought to be paid. He further testified, that he considered the owners and sharesmen all bound to pay this bill; and that it was the custom on the *Penobscot River* for the owners of vessels engaged in fishing upon the usual shares, as in this case, to pay their own proportion of all articles included in the great general bill; and that barrels are always included in that bill. It was then agreed by the parties to take the case from the jury, and upon the evidence to submit the whole matter to the opinion of the Court, who were to make the same inferences from the evidence, which a jury might properly do, and should order a nonsuit or default according to their opinion.

*W. Kelley*, for the plaintiff, argued, that the defendants were liable: — 1. By the terms of the contract. *Emery* v. *Hersey*, 4 *Greenl.* 407. 2. Because they directed the purchase. 3. Because the property was put into the common stock in the great general bill. 4. By the usage on the river. *Williams* v. *Gilman*, 3 *Greenl.* 276.

*W. G. Crosby* argued for the defendants, that where a vessel is let on shares, and the master is to man and victual her, as in this case, that the owners are not liable for the contracts of the master. *Reynolds* v. *Toppan*, 15 *Mass. R.* 370; *Taggard* v. *Loring*, 16 *Mass. R.* 336; *Perry* v. *Osborn*, 5 *Pick.* 422; *Cutler* v. *Win-*

sor, 6 *Pick.* 335; *Thompson* v. *Snow,* 4 *Greenl.* 264; *Winsor* v. *Cutts,* 7 *Greenl.* 261. By the plaintiff's own showing, *Todd,* the master, was liable as a sharesman, and the release of one promissor discharges the whole. *Walker* v. *McCullock,* 4 *Greenl.* 421; *Gardiner* v. *Nutting,* 5 *Greenl.* 140; *Ward* v. *Johnson,* 13 *Mass. R.* 148; *Tuckerman* v. *Newhall,* 17 *Mass. R.* 581. The whole of the great general bill, is first deducted from the proceeds, and whatever remains should be divided.

The opinion of the Court was by

WESTON C. J. — We do not perceive sufficient ground for distinguishing this case from others, cited for the defendants, where the owners were held not liable for supplies furnished for a vessel, which the master had taken on shares. The master was to take the outfits and supplies from the owners, but it was to be in their character as merchants. The letter of the master, which is a part of the case, shows that he was to be the purchaser of the barrels. They were, it seems, to be charged in the great general bill, but this was with a view to a proper adjustment of the business, among the parties concerned. We cannot deduce from the testimony of the master, that it was the intention of the owners to pledge their credit for the barrels, which it belonged to him to purchase. Their letter to him contains only matter of advice, as to the course which it would be proper for him to take.

But if the plaintiff's claim was against the owners and sharesmen of the vessel, as he charged it, he has released the master, who was one of the principal sharesmen. And it is a well established principle of law, that if a creditor releases one of several, who are jointly liable to him, all are thereby discharged. *Tuckerman & al.* v. *Newhall,* 17 *Mass. R.* 581.

*Plaintiff nonsuit.*